# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Matter of:<br>Mebrahtu Yakob Weldeabzghi,<br><br>Petitioner. | Case No. 11-cv-03087 (SRN/SER)<br><br>**MEMORANDUM OPINION AND ORDER** |

P. Chinedu Nwaneri, Nwaneri Law Firm, PLLC, 4655 Nicols Road, Suite 106, Eagan, Minnesota 55122, for Petitioner.

David W. Fuller, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent.

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Mebrahtu Yakob Weldeabzghi's ("Petitioner") Amended Petition for an order requiring the United States Citizenship and Immigration Service ("USCIS") to issue him an amended certificate of naturalization. [Doc. No. 17.] Petitioner's certificate of naturalization now bears the birthdate of December 11, 1963. (Id. at 3.) He seeks an amended certificate bearing what he alleges is his true birthdate of December 11, 1953. (Id.) The Government has filed a Motion to Dismiss the Amended Petition [Doc. No. 19] and Petitioner has filed a Motion to Amend Naturalization Order and Further Amend Petition, [Doc. No. 39], a Motion to Amend Naturalization Order and a Motion to Order USCIS to Amend Petitioner's Certificate of Naturalization Nunc Pro Tunc, [Doc. No. 49], and Motion to Further Amend Petition. [Doc. No. 58.] For the reasons set forth below, the Court determines that it has jurisdiction to amend Petitioner's

1

certificate of naturalization and will allow the parties to conduct limited discovery on Petitioner's birthdate.

## I. BACKGROUND

Petitioner was born in Eritrea. (Am. Pet. ¶ 1 [Doc. No. 17].) He was imprisoned from 1989 to 1991 by the government of Ethiopia and from 1992 to 1994 by the government of Eritrea. (Id. ¶ 21.) He claims to have been severely tortured during both imprisonments. (Id. ¶ 22.) Petitioner "believes that he was imprisoned because he worked as a small merchant and was suspected of supplying materials to an opposition party." (Id. ¶ 23.)

While Petitioner was imprisoned in 1994, his family members "organized to secure [his] release from detention." (Id. ¶ 25.) They obtained an Eritrean identity card and passport for Petitioner, which stated incorrectly that his birthdate was December 11, 1963. (Id.) Petitioner's family members "subsequently secured [his] release from jail and, within a few days, [he] left Eritrea for the United States" using the passport with the incorrect year of birth. (Id. ¶¶ 26–27.)

Petitioner arrived in the United States in August 1994 and his Eritrean passport was his "main identity document." (Id. ¶ 28.) Upon arrival, he applied for asylum. (Id. ¶ 29.) Government agencies in the United States "adapted [sic] [Petitioner's] biographic information from the Passport and stated [his] date of birth as December 11, 1963 . . . instead of December 11, 1953." (Id. ¶ 30.)

On October 9, 2002, Petitioner was naturalized as a United States citizen and was issued a certificate of naturalization. (Id. ¶ 31; see also Gov't Ex. A [Doc. No. 22].)

During the interview with USCIS before Petitioner became a naturalized citizen, Petitioner was asked by a USCIS official if he wanted to change his name and Petitioner responded that he did not want to change his name, but rather "wanted to change his date of birth because it bears the wrong year." (Am. Pet. ¶ 32 [Doc. No. 17].) The USCIS official requested documentation from Petitioner regarding his birthdate and, when Petitioner informed the USCIS official he did not possess any, he was told that he must "obtain relevant documentation from his country of birth before he could apply to change his date of birth." (Id.)

Petitioner was unable to get documentation regarding his birthdate from Eritrea while he was in the United States. (Id. ¶ 35.) In 2008, Petitioner travelled to Eritrea after he deemed it safe again for him to visit the country. (Id. ¶¶ 33–34.) He made an application to an Eritrean court to enter an order regarding his correct birthdate. (Id. ¶ 37.) On June 30, 2009, the Eritrean court entered an order stating that Petitioner's correct birthdate is December 11, 1953. (Id.; see also Pet'r's Aff. ¶ 15, Ex. A [Doc. No. 11].) Pursuant to the Eritrean court's order, on February 10, 2010, the Municipality of Asmara's Public Registration Office issued Petitioner a certificate of birth bearing a birthdate of December 11, 1953. (Am. Pet. ¶ 38 [Doc. No. 17]; Pet'r's Aff. ¶ 16, Ex. B [Doc. No. 11].)

Once Petitioner returned to the United States, he presented his certificate of birth to the appropriate government agencies. (Am. Pet. ¶ 39–40 [Doc. No. 17].) Petitioner then submitted an application to Hennepin County District Court to have his birthdate changed. (Id. ¶ 41.) He participated in an evidentiary hearing before the Hennepin

3

County District Court on April 7, 2011, which resulted in an order from the court granting his request to change his birthdate. (Id.; see also Pet'r's Aff. ¶ 25, Ex. E [Doc. No. 11].) Petitioner provided his Certificate of Birth to the Minnesota Division of Motor Vehicles ("DMV"), which provided him a new driver's license bearing a birthdate of December 11, 1953. (Am. Pet. ¶ 39 [Doc. No. 17].)

Petitioner then applied with the Social Security Administration ("SSA") to change his birthdate and SSA informed Petitioner that he must first change it with USCIS. (Id. ¶ 42; see also Pet'r's Aff. ¶ 26.) As a result, on April 20, 2011, Petitioner submitted to USCIS a Department of Homeland Security ("DHS") Form N-565 "Application for Replacement Naturalization/Citizenship Document" to change his birthdate from December 11, 1963 to December 11, 1953. (Am. Pet. ¶ 42 [Doc. No. 17]; Gov't Ex. B [Doc. No. 22].) Petitioner provided a copy of the Hennepin County District Court order with his DHS Form N-565. (Id.)

USCIS sent Petitioner a Request for Evidence ("RFE") on July 28, 2011, indicating that he had not submitted sufficient documentation with his application. (Gov't Ex. C [Doc. No. 22].) The RFE stated,

> Please submit a clear and legible copy of a recent photo identity document showing your picture, name, and date of birth. Such a document can be a clear and legible copy of the identity page from your passport, a clear and legible copy of a current driver's license, or another type of photo ID with the same information. The identity document must clearly show your photograph and identity information.

(Id.) The RFE also noted that "[t]he State of Minnesota District Court does not have authority to amend your date of birth in matters of your naturalization. Only a **U.S.**

**Federal Court**, with jurisdiction over your naturalization proceedings, has the authority to order that an amendment be made to your Certificate of Naturalization." (Id.) (emphasis added.)

Petitioner filed a Petition to Amend Certificate of Naturalization to Reflect Correct Date of Birth in this Court on October 19, 2011. (Pet. [Doc. No. 1].) The Government filed a Motion to Dismiss the Petition on December 23, 2011. (Mot. to Dismiss Pet. [Doc. No. 5].) Subsequently, the parties entered into a Stipulation whereby the Government agreed to withdraw its Motion to Dismiss and Petitioner was provided an opportunity to file an amended Petition, which the Court approved on March 2, 2012. (Am. Stip. [Doc. No. 15]; Order dated March 2, 2012 [Doc. No. 16].)

Petitioner filed an Amended Petition on March 10, 2012, and the Government filed a Motion to Dismiss the Amended Petition on March 26, 2012. (Am. Pet. [Doc. No. 17]; Mot. to Dismiss [Doc. No. 19].) The Court scheduled a hearing on the Government's Motion to Dismiss the Amended Petition on August 23, 2012. [Doc. No. 31.] On the day of the hearing, Petitioner filed a Motion to Amend Naturalization Order and Further Amend Petition. [Doc. No. 39.] The Court took the Government's Motion to Dismiss under advisement and required Petitioner to schedule an additional hearing on his Motion to Amend to provide the Government an opportunity to respond to the Motion. [Doc. No. 45.]

Petitioner filed a Motion to Amend Naturalization Order and Further Amend Petition on August 23, 2012. [Doc. No. 39.] On September 12, 2012, Petitioner filed a Motion to Amend Naturalization Order and a Motion to Order USCIS to Amend

5

Petitioner's Certificate of Naturalization Nunc Pro Tunc. [Doc. No. 49.] Petitioner refers to this as his "Joint Motion." (See Mem. in Opp'n to Mot. for Extension at 2 [Doc. No. 63].) Petitioner has stated that the "joint motion is intended to amend or supersede [his] earlier Motion to Amend Naturalization Order and Further Amend Petition [Docket No. 39]."[1] (Id.) Petitioner filed another Motion to Further Amend Petition on September 13, 2012. [Doc. No. 58.]

On October 20, 2012, USCIS denied Petitioner's request to amend his birthdate. (Pet'r's Supp. Decl. ¶ 3, Ex. G [Doc. Nos. 74–75].) USCIS explained that Petitioner had "failed to establish that a clerical error was made in preparing the certificate [of naturalization] or that [Petitioner's] date of birth does not conform to the facts as shown on [his] original application for naturalization." (Id.) The Court held a hearing on Petitioner's pending Motions to Amend on November 1, 2012 and took the Motions under advisement. [Doc. No. 78.]

## II. DISCUSSION

### A. Standard of Review

The Government asks the Court to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1). [Doc. No. 19.] Because the Government questions the Court's jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d

---

[1] Because Petitioner has made clear that his Joint Motion was intended to supersede his earlier Motion to Amend Naturalization Order and Further Amend Petition, the Court denies Petitioner's Motion to Amend Naturalization Order and Further Amend Petition [Doc. No. 39] as moot.

724, 730 (8th Cir. 1990) (citation omitted). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs draw from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. As the United States Supreme Court recently stated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556. A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a

motion to dismiss under Rule 12(b)(6). Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

## B. The Court's Jurisdiction

Petitioner maintains that this Court has jurisdiction over this matter pursuant to the now repealed statute previously codified at 8 C.F.R. § 334.16(b). (Am. Pet. ¶ 2 [Doc. No. 17].) He contends that the regulation allows for the amendment of a non-clerical error on a naturalization certificate. (Pet'r's Opp'n Mem. to Gov't's Mot. to Dismiss at 10 [Doc. No. 33].) Section 334.16(b) provided:

> Whenever an application is made to the court to amend a petition for naturalization after final action thereon has been taken by the court, a copy of the application shall be served upon the district director having administrative jurisdiction over the territory in which the court is located, in the manner and within the time provided by the rules of court in which application is made. No objection shall be made to the amendment of a petition for naturalization after the petitioner for naturalization has been admitted to citizenship if the motion or application is to correct a clerical error arising from oversight or omission. A representative of the Service may appear at the hearing upon such application and be heard in favor of or in opposition thereto. When the court orders the petition amended, the clerk of court shall transmit a copy of the order to the district director for inclusion in the Service file.

8 C.F.R. § 334.16(b) (2010). Although 8 C.F.R. § 334.16(b) specifically gave federal courts the power to order amendments to petitions for naturalization, courts have also used this regulation to make amendments to certificates of naturalization. Hussain v. USCIS, 541 F. Supp. 2d 1082, 1085 (D. Minn. 2008) (Schiltz, J.) (noting that while § 334.16(b) "on its face gives courts the power to amend petitions for naturalization" it also "implicitly gives the Court the power to order USCIS to issue [a petitioner] an amended certificate of naturalization"); Kouanchao v. USCIS, 358 F. Supp. 2d 837, 839–40 (D.

8

Minn. 2005) (Davis, J.) (stating that "[w]hile the [USCIS] regulations may not permit it to administratively amend the birthdate on a Certificate of Naturalization in the absence of a clerical error . . . this Court has the power to order such an amendment") (citations omitted); see also Khan v. USCIS, No. 2:11-cv-00811, 2011 U.S. Dist. LEXIS 67697, at *2 (D. Nev. June 23, 2011) ("Although 8 C.F.R. § 334.16(b) specifically gives federal courts the power to order amendments to petitions for naturalization, courts also use this regulation to make amendments to certificates of naturalization.") (emphasis in original and citations omitted); In re Lee, No. C 06-80150-MISC MJJ, 2007 WL 926501, at *2 (N.D. Cal. Mar. 26, 2007) (same); Nguyen v. DHS, No. 1:06-MC-118, 2007 WL 2156649, at *3 (N.D.N.Y. July 25, 2007) (same); Varghai v. INS, 932 F. Supp. 1245, 1246 (D. Or. 1996) (same).

Until 1990, federal courts had exclusive jurisdiction to naturalize non-citizens. Lashkariani v. USCIS, No. 3:11-cv-00733, 2012 WL 3615460, at *2 (D. Nev. Aug. 21, 2012) (citations omitted). In 1990, however, Congress extensively modified United States Immigration law by transferring the power to naturalize citizens from the district courts to the executive branch. Administrative Naturalization, 56 Fed. Reg. 50475-01, 50475 (Oct. 7, 1991) (codified in scattered section of 8 C.F.R); see also 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.").[2]

---

[2] Under the Homeland Security Act, the power to naturalize non-citizens has been transferred to the DHS, who in turn, delegated it to USCIS. See 8 C.F.R. § 310.1.

9

Section 334.16(b) was "traditionally interpreted to apply only to naturalization petitions issued by courts before 1990." Lashkariani, 2012 WL 3615460, at *2. A recent line of cases, however, has interpreted 8 C.F.R. § 334.16(b) to apply to both pre-1990 court ordered naturalization documents as well as post-1990 agency-issued naturalization certificates. See id. (citations omitted). For example, in Hussain, the petitioner sought to amend his certificate of naturalization which bore an incorrect birthdate. 541 F. Supp. 2d at 1083. Although the petitioner was naturalized in 1995, the Court found that it had jurisdiction under 8 C.F.R. § 334.16(b) to amend his agency-issued naturalization certificate to reflect his correct birthdate. Id. at 1085.

Similarly, in Lashkariani, the petitioner was naturalized on June 4, 2001 and her naturalization certificate listed an incorrect birthdate. 2012 WL 3615460, at *1. The petitioner filed a Form N-565 "Application for Replacement Naturalization/Citizenship Document," which USCIS denied. Id. at *1. USCIS explained that it "does not have authority to change a date of birth" when the originally printed date of birth is not the result of clerical error. Id. at 2. USCIS also stated that "[o]nly a U.S. Federal District Court having jurisdiction over [petitioner's] Naturalization proceeding has the authority to order a change in date of birth." Id. The petitioner then filed a petition for a writ of mandamus to amend her naturalization certificate. Id. The District of Nevada determined that even though petitioner was naturalized after 1990, it had "original jurisdiction over [p]etitioner's petition to amend her date of birth under 8 C.F.R. § 334.16(b)." Id. at *3.

Other courts have also recognized that they possess jurisdiction to amend a post-1990 agency-issued naturalization certificate. For example, in Binh Quang Le v. USCIS, the Northern District of California determined that it had jurisdiction to amend a certificate of naturalization issued in 1991 by USCIS. No. C11-01871, 2011 WL 3678909, at *1 (N.D. Cal. Aug. 22, 2011). Similarly, in Nguyen v. DHS, the Northern District of New York granted a petitioner's request to change her birthdate on her agency issued naturalization certificate approximately fifteen years after she was naturalized in 1990 (after the Immigration Act took effect). No 1:06-MC-118, 2007 WL 2156649, at *1 (N.D.N.Y. July 25, 2007).

As in Hussain, Lashkariani, Bin Quang Le, and Nguyen, Petitioner seeks an amendment to his agency-issued certificate of naturalization to bear his correct birthdate. Like the petitioners in each of these cases, Petitioner here filed his petition before the effective date of § 334.16(b)'s repeal on November 28, 2011. Petitioner filed an "Application for Replacement Naturalization/Citizenship Document," Form N-565, with USCIS in April 2011 and his original petition in this Court in October 2011. [Doc. No. 1.] "Regulations have been deemed applicable as long as they were in effect when the events that they affect occurred." See Lashkariani, 2012 WL 3615460, at *3 n.2 (citing Reeb v. Thomas, 636 F.3d 1224, 1225 n.1 (9th Cir. 1982); Garcia v. Andrus, 692 F.2d 89, 92 n.4 (9th Cir. 1982); Perotti v. Holt, 483 F. App'x 272, 274 (7th Cir. 2012)).[3]

---

3  The Government cites FirstCom, Inc. v. Quest Corp., 555 F.3d 669, 676 (8th Cir. 2009) in support of its argument that Petitioner cannot establish jurisdiction under § 334.16(b) because it was repealed on November 28, 2011. The Court finds that Firstcom is distinguishable, however, because in that case the statute underlying the

Accordingly, the Court agrees with the holdings of Hussain, Lashkariani, Bin Quang Le, and Nguyen that § 334.16(b), while it was in effect, granted jurisdiction to federal courts to order amendments to agency-issued certificates of naturalization. The Court notes, however, that its holding does not create jurisdiction over future petitions to amend non-clerical errors filed under § 334.16(b) after it was repealed on November 28, 2011.[4]

### C. Statute of Limitations

The Government argues that Petitioner's amended petition is barred by the statute of limitations contained in 28 U.S.C. § 2401(a). (Gov't Mem. in Supp. of Mot. to Dismiss at 3–7 [Doc. No. 21].) Section 2401(a) is a general statute of limitations for suits against the government, which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right

---

plaintiff's claim expired "more than three months before [the plaintiff] filed its complaint." Id.

[4] The Government also argues that the Court should dismiss Petitioner's Amended Petition under Federal Rule of Civil Procedure 12(b)(6) because 8 C.F.R. § 334.16(b) does not allow the Court "to amend Petitioner's naturalization certificate at this time to reflect a different date of birth." (Gov't's Mem. in Supp. of Mot. to Dismiss at 9–13 [Doc. No. 21].) Because the Court has determined that § 334.16(b) provides it the authority to order amendments to agency-issued certificates of naturalization, the Court denies the Government's Rule 12(b)(6) motion. Additionally, Petitioner alternatively argues that the Court possesses jurisdiction over his Amended Petition under the Administrative Procedure Act and the Full Faith and Credit Clause of the United States Constitution. (Pet'r's Mem. in Opp'n to Gov't's Mot. to Dismiss at 6–12 [Doc. No. 33].) Petitioner has also filed Motions to Amend his Petition to assert jurisdiction pursuant to Federal Rule of Civil Procedure 60, the Nunc Pro Tunc principle, and the inherent jurisdiction of this Court. (Joint Motion [Doc. No. 49]; Motion to Further Amend [Doc. No. 58].) Because the Court has determined that it possesses jurisdiction over this action under 8 C.F.R. § 334.16(b), the Court need not address Petitioner's alternative bases for jurisdiction. Accordingly, the Court denies Petitioner's Motions to Amend as moot.

of action first accrues." A "claim against [the] United States first accrues 'on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d 751, 759 (8th Cir. 2009) (citations omitted). Thus, a plaintiff's claim "accrues" for purposes of § 2401(a) when the plaintiff "either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim." Id. (citations omitted).

The Eighth Circuit has held that "[b]ecause suits against the government are subject to equitable tolling, compliance with this limitations period is not a jurisdictional prerequisite to suing the government." Krueger v. Saiki, 19 F.3d 1285, 1286 (8th Cir. 1994) (citing Schmidt v. United States, 933 F.2d 639, 640 (8th Cir.1991)); see also Irwin v. Dep't of Veterans Affairs., 498 U.S. 89, 95–96 (1990) ("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply in suits against the United States."); Bertin v. United States, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("[E]quitable tolling may be available for actions against the federal government . . . and may toll the catch-all statute of limitation, 28 U.S.C. § 2401(a).") (citations omitted); Clymore v. United States, 217 F.3d 370, 374 (5th Cir. 2000) ("We hold, therefore, that the doctrine of equitable tolling has potential application in suits, like this one, that are governed by the statute of limitations codified at 28 U.S.C. § 2401(a)."). The Government bears the burden of proving, as an affirmative defense, that Petitioner failed to comply with the limitations period. Krueger, 19 F.3d at 1286; Slaaten v. United States, 990 F.2d 1038, 1043 n.5 (8th Cir. 1993).

Because statutes of limitations protect "important interests of certainty, accuracy, and repose, equitable tolling 'is an exception to the rule, and should therefore be used only in exceptional circumstances.'" Motley v. United States, 295 F.3d 820, 824 (8th Cir. 2002) (citations omitted). "The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it." Wollman v. Gross, 637 F.2d 544, 549 (8th Cir. 1980), cert. denied, 454 U.S. 893 (1981). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Johnson v. Hobbs, 678 F.3d 607, 610 (8th Cir. 2012) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

The Government relies on a non-binding, unpublished Central District of California case, Udengwu v. Holder, in support of its argument that Petitioner's action is barred by § 2401(a). No. 10-cv-01819, slip. op. at 3–4 (C.D. Cal. Jan. 13, 2012). In Udengwu, the petitioner sought to amend his certificate of naturalization to correct the birthdate listed. Id. at 1. The court determined that petitioner's request was barred by the statute of limitations stating that "[a]lthough it is true that Defendants have identified no cases holding that § 2401(a) does apply, the statute's plain language . . . on its face encompasses Plaintiff's action." Id. at 3–4.

The Court finds the analysis in Udengwu unavailing. The Court notes that 8 C.F.R. § 334.16(b), the basis for which it has determined it has jurisdiction over this action, does not contain a time limitation for making a request to amend a certificate of naturalization. Moreover, this Court has declined to apply the statute of limitations

14

contained in 28 U.S.C. § 2401 on numerous occasions in analogous situations where petitioners seek to amend their dates of birth on certificates of naturalization pursuant to § 334.16(b). For example, in Kouanchao, this Court granted a petitioner's request to change her birthdate on her naturalization certificate even though she waited approximately twenty-one years after she was naturalized to file a petition with the Court. 358 F. Supp. 2d at 842. The Court stated that "[a]lthough it would have been preferable for [petitioner] to have . . . corrected the mistake at an earlier time, the passage of time does not bar her application." Id. Similarly, in Hussain, the petitioner learned that his birthdate on his naturalization certificate was incorrect approximately nine years before he filed a petition in this Court. 541 F. Supp. 2d at 1084. This Court granted petitioner's request to amend his naturalization certificate to change his date of birth. Id. at 1091. Likewise, in In re Nguyen, this Court concluded that "[a]lthough it would have been preferable for Petitioner to have corrected the mistake at an earlier time, the passage of [twenty-seven years] . . . does not bar his application." No. 05-MC-61, 2006 WL 2860814, at *3 (D. Minn. Oct. 4, 2006) (Tunheim, J.).

Other courts have concluded that requests to amend naturalization certificates pursuant to § 334.16(b) are not subject to a statute of limitations. In Nguyen, the Northern District of New York granted a petitioner's request to change the birthdate on his certificate of naturalization even though the petitioner knew that it had been incorrect when issued in 1990—over six years before filing his petition. 2007 WL 2156649, at *1. Additionally, the Western District of Tennessee determined in Pyun v. Jarina, that even though the petitioner "candidly admit[ed] that he could have taken steps much sooner to

15

correct his date of birth on his Certificate of Naturalization . . . the lengthy passage of [over thirty-four years] alone does not preclude a petitioner from seeking an amendment." No. 07-2817-P, 2009 WL 1636272, at *4 (W.D. Ten. June 11, 2009) (citations omitted). Accordingly, the Court determines that Petitioner's Amended Petition is not barred by § 2401(a).

Moreover, even if the Court were to conclude that the statute of limitations contained in § 2401 applied, Petitioner would be entitled to equitable tolling. Petitioner came to the United States in 1994 seeking asylum after being imprisoned in Eritrea from 1989 to 1991 and 1992 to 1994. (Am. Pet. ¶¶ 21, 28 [Doc. No. 17].) After securing his release from detention, Petitioner's family members obtained an Eritrean identity card and passport for him to use to leave the country, which incorrectly stated that his birthdate was December 11, 1963. (Id. ¶ 25.) After arriving in the United States and applying for asylum, government agencies "adapted [sic] [Petitioner's] biographic information from the Passport and stated [his] date of birth as December 11, 1963 . . . instead of December 11, 1953." (Id. ¶ 30.)

When Petitioner was in the process of applying for citizenship, he interviewed with USCIS and told the officer he "wanted to change his date of birth because it bears the wrong year." (Id. ¶ 32.) The officer responded that Petitioner would need to "obtain relevant documentation from his country of birth." (Id.) Petitioner was unable to obtain documentation from Eritrea while he was in the United States, but determined in 2008 that it was safe for him to return to his home country. (Id. ¶¶ 33–34.) While there, Petitioner applied to an Eritrean court to enter an order regarding his correct date of birth,

16

which was granted on June 30, 2009. (Id.) The Municipality of Asmara's Public Registration Office issued Petitioner a Certificate of Birth bearing his actual birth date on February 10, 2010. (Id. ¶ 38.)

Petitioner then submitted an application to Hennepin County District Court to have his birthdate changed. (Id. ¶ 41.) After participating in an evidentiary hearing, the court granted his request to change his birthdate on April 2011. (Id.) Petitioner then applied with SSA to change his birthdate and was informed he must first change it with USCIS. (Id. ¶ 42.) Petitioner then submitted an "Application for Replacement Naturalization/Citizenship Document," Form N-565, to USCIS on April 20, 2011 along with a copy of the Hennepin County District Court order. (Id. ¶ 42; Gov't Ex. A [Doc. No. 22].) USCIS responded by sending Petitioner an RFE on July 28, 2011, stating that "[t]he State of Minnesota District Court does not have authority to amend your date of birth in matters of your naturalization. Only a U.S. Federal Court, with jurisdiction over your naturalization proceedings, has the authority to order that an amendment be made to your Certificate of Naturalization." (Gov't Ex. C [Doc. No. 22].) After receiving the RFE from USCIS, Petitioner filed a Petition to Amend Certificate of Naturalization to Reflect Correct Date of Birth on October 19, 2011. (Pet. [Doc. No. 1].)

The facts above demonstrate that Petitioner has acted diligently to amend his birthdate on his certificate of naturalization. It was USCIS who informed Petitioner that he would need to obtain documentation from his home country to correct his birthdate on his naturalization certificate. After travelling to Eritrea to obtain the necessary documentation and receiving an order from Hennepin County District Court granting his

17

request, USCIS told Petitioner to pursue his claim in United States federal court—and then contested the federal court's jurisdiction over his claim. Additionally, extraordinary circumstances prohibited Petitioner from resolving this issue sooner as it was not safe for him to return to Eritrea to obtain the relevant documentation—as evidenced by Petitioner's application for asylum in the United States. The Court therefore finds that, if the statute of limitations contained in § 2401 were to apply to Petitioner's Amended Petition, it would be subject to equitable tolling and Petitioner could nonetheless pursue his claim.

### C. Petitioner's Request to Amend His Date of Birth on His Naturalization Certificate

The burden is on the petitioner to demonstrate by clear and convincing evidence that the birthdate on his certificate of naturalization is incorrect. Hussain, 541 F. Supp. 2d at 1087. In addition, the petitioner must present reliable evidence supporting the correct birthdate. Id. As the Court explained in Hussain,

> The Court understands why a petitioner should be required to prove by clear and convincing evidence that the date of birth appearing on an existing certificate is inaccurate before USCIS is ordered to issue an amended certificate. Certificates of naturalization are important documents —official documents on which governmental and private entities rely—and requests to alter a birth date on such important documents should not be treated lightly. One who seeks to have an existing certificate torn up and replaced with a new certificate should thus bear a heavy burden. But once the petitioner meets that burden—once the petitioner proves, by clear and convincing evidence, that the date of birth on his certificate [is] incorrect— then it makes less sense to require clear and convincing evidence of the accuracy of the date of birth proposed for the amended certificate.
>
> After all, someone applying for permanent residence in the United States or for United States citizenship does not have to provide clear and convincing evidence of his or her date of birth. Moreover, in cases such as this . . . it

> may be much easier for the petitioner to prove that the birth date on his certificate is incorrect than to prove that the replacement date that he proposes is correct. It may be that the latter is—and can never be anything but—a good-faith approximation.
>
> In the Court's view, then, once a petitioner has proven by clear and convincing evidence that the date of birth appearing on his certificate of naturalization is incorrect, the USCIS should be ordered to issue an amended certificate with the date of birth proposed by the petitioner as long as the petitioner submits reliable evidence of the accuracy of that proposed date.

Id. at 1090 (emphasis in original). Even if a petitioner is able to satisfy both of these requirements, the court may nevertheless deny the petition if there is evidence that "the petitioner acted fraudulently or in bad faith either when he or she initially provided the incorrect birth date to immigration authorities or when he or she later sought to amend the certificate of naturalization." Id. at 1087.

The Government has requested that, if the Court were to consider the question of Petitioner's actual birthdate on the merits, that it be allowed to conduct limited discovery. (Gov't's Resp. to Mots. to Amend at 9 n.5 [Doc. No. 71].) Specifically, the Government requests the ability to propound limited document requests and conduct limited depositions. (Id.) The Court agrees with the Government that limited discovery is warranted and directs the parties within ten days of the date of this Order to schedule a Rule 16 conference with Magistrate Judge Rau to set a schedule of limited discovery consistent with this Order.

### III. ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. The Government's Motion to Dismiss the Amended Petition [Doc. No. 19] is **DENIED**;

2. Petitioner's Motion to Amend Naturalization Order and Further Amend Petition [Doc. No. 39], Joint Motion [Doc. No. 49], and Motion to Further Amend Petition [Doc. No. 58] are **DENIED AS MOOT**; and

3. The parties are directed to contact Magistrate Judge Rau within ten days and schedule a Rule 16 conference to set a schedule of limited discovery consistent with this Order.

Dated: February 27, 2013

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge